Clyde O. WILLIAMS et al., Plaintiffs,

v.

NATIONAL SURETY CORPORATION et al., Defendants.

R. F. BALL CONSTRUCTION COMPANY, Inc., a corporation, Plaintiff,

v.

UNITED STATES FIDELITY A N D GUARANTY COMPANY, a corporation, Defendant.

Civ. A. Nos. 8328, 8564.

United States District Court
N. D. Alabama, S. D.

June 17, 1957.

Levine & Fulford and R. Clifford Fulford, Birmingham, Ala., for plaintiffs Clyde O. Williams et al.

London & Yancey and James E. Clark, Birmingham, Ala., and Richard U. Simon, Fort Worth, Tex., for R. F. Ball Const. Co.

London & Yancey and James E. Clark, Birmingham, Ala., for defendants Nat. Surety Corp. et al.

Spain, Gillon & Young, Frank Young, and Ralph B. Tate, Birmingham, Ala., for defendant U. S. Fidelity & Guaranty Co.

GROOMS, District Judge.

These cases were consolidated for trial. The jury returned a verdict for the defendants in Civil Action No. 8328 and for the plaintiff in the amount of $15,000 in Civil Action No. 8564. The plaintiffs in the former case were the subcontractors of the plaintiff in the latter case on the Desire Street Housing Project in the City of New Orleans. The defendants in Case No. 8328 are the sureties of the plaintiff in Case No. 8564. The defendant in the latter case is the surety of the plaintiffs in the former case.

Plaintiff Ball in Case No. 8564 and the defendants in Case No. 8328 (hereinafter referred to as the successful parties) have filed motions, under Rule 60(a) of the Federal Rules of Civil Procedure, 28 U.S.C.A., to correct the verdict and judgment entries. Plaintiffs Williams et al. and the defendant, United States Fidelity & Guaranty Company (hereinafter referred to as the unsuccessful parties), have moved for an order directing the Clerk to avoid and to expunge from the records the verdicts and judgments.

The trial of these cases commenced on Wednesday, March 27, 1957. The taking of the evidence was concluded on Saturday, April 6th, following which the Court delivered its charge to the jury. The jury, after deliberating approximately three hours, was recessed at 11:00 p. m., until 9:00 a. m., on Sunday, April 7th. The recess was with the knowledge of all parties and their counsel. The jury deliberated until about 3:00 p. m. on Sunday, April 7th, when they returned and requested additional instructions as to the minimum amount of damages that could be awarded in each case. At the conclusion of the Court's remarks, Mr. Clark, attorney for the successful parties,

moved for further instructions. Objections were entered to the giving of further instructions and a motion made to exclude the attorney's remarks. The objections were sustained and the remarks were excluded, and the jury then continued its deliberation. Out of the presence of the jury, a motion for a mistrial, based on Mr. Clark's remarks, was made. This motion was overruled. At 3:20 p. m., Sunday, April 7th, the jury returned with a verdict in each case. When the verdicts were announced, Mr. Young, attorney for the defendant in Case No. 8564, demanded a poll of the jury. This poll was conducted, following which the jury was discharged.

These cases were concluded on Sunday, April 7th, due to the fact that the annual session of the court for the Northwestern Division, sitting at Florence, was scheduled to begin at 10:00 a. m. on Monday, April 8th. No District Judge in Alabama was available for assistance, since the Honorable Seybourn H. Lynne, Chief Judge of this District, was holding court in the Western Division at Tuscaloosa on that date, and the Judges of the Middle and Southern Districts were engaged in trials in their own districts.[1] The parties and attorneys were apprised of this situation and they made no objections to the jury continuing its deliberations on Sunday or to the returning of the verdicts on that day. If permissible, if was not feasible for the Judge to pursue the practice of the times of Blackstone of carrying the jury around the district with him.[2]

On the following morning, Monday, April 8, 1957, the Chief Deputy Clerk, with her accustomed promptness, entered the verdicts of the jury and the judgments on the dockets, dating the entries April 7, 1957.

**I**

Rule 58 of the Federal Rules of Civil Procedure, in part, provides that

---

1. See Gholston v. Gholston, 31 Ga. 625, 638, where the judge hearing the case

was, by law, required to open and hold court in another county.

2. Reid v. State, 53 Ala. 402.

"Unless the court otherwise directs and subject to the provisions of Rule 54(b), judgment upon the verdict of a jury shall be entered forthwith by the clerk * * *. The notation of a judgment in the civil docket as provided by Rule 79 (a) constitutes the entry of the judgment; and the judgment is not effective before such entry."

Rule 79(a) in part provides that

"The notation of an order or judgment shall show the date the notation is made."

Pursuant to Rule 79(a), the record should recite the true date of the entries of the verdicts and judgments. Since there is a third party complaint in Civil Action No. 8564, and the Court having given no direction as to the entry of a final judgment as provided by Rule 54(b), the entry of judgment in that case was in any event premature, and should be vacated pending an express determination that there is no just reason for delay. The motions to correct the verdicts and judgment entries are due to be granted.

## II

In the early case of Nabors v. State, 6 Ala. 200, the Court, though vacating the verdict and judgment because the term of the trial court had expired at midnight on Saturday, recognized the rule that the jury was not necessarily discharged because of the intervention of a Sunday. This case was cited in Stone v. United States, 167 U.S. 178, 196, 17 S.Ct. 778, 42 L.Ed. 127, as substantially sustaining the principle that the receiving and entering of a verdict cannot be questioned upon the ground that those things occurred on Sunday.

In Reid v. State, 53 Ala. 402, the final charge of the Court to the jury was finished at 20 minutes before twelve o'clock Saturday night. At about three o'clock on Sunday morning the verdict was received and, by agreement of counsel, was opened and the jury discharged. The defendant duly challenged the legality of the verdict. Following an extensive review of the authorities, the Court concluded as follows:

"So, we are of opinion that when a jury, to whom a cause has been committed on a Saturday or other secular week day, are lawfully kept together under charge of officers of court, and are ready on Sunday to deliver in their verdict, it is lawful for the judge then to meet them with the other officers of court to receive it, and thereupon to discharge the jury, and to adjourn the court until the next day. This is not making Sunday *dies juridicus*, within the meaning of the common law."

To support its conclusion, the Court referred to the trial in London of William Penn and one Mead for tumultuous assembly, in the time of Charles II. 6th State Trials, 951. In that case, the cause was given to the jury on Saturday, September 3, 1670. The jury returned a verdict on that day. The judges would not receive the verdict, and adjourned the Court until next morning. Twice on Sunday the Court met the jury and refused to receive their verdict, then adjourned to the next day, when a verdict of "not guilty" was rendered. The Court, adverting to that decision, stated:

"This trial took place at the 'Old Bailey,' before the enactment of the Sunday statute of 29 Charles II. And however much we may be shocked at some of its incidents, surely the practice of this famous criminal court of London, held by its highest magistrates, in the capital of the country which was the home of the common law, may be regarded as establishing that the sitting of a court on Sunday to receive the verdict of a jury was not illegal according to that common law."

The Court also referred to an early statute of New York in which it was provided that

"No court shall be opened, or transact any business, on Sunday, *unless it be for the purpose of receiving a verdict or discharging a jury;* and every adjournment of a

court on Saturday to another day, shall always be to some other day than Sunday, *except such adjournment as may be made after a cause has been committed to a jury * * *.*" 2 R.S. p. 275, § 7. (Emphasis supplied.)

The Court then added:

"This clause seems to us to express, with much precision, what was, indeed, the common law on the subject without any statute."

The Reid case was followed in Chamblee v. State, 78 Ala. 466; Simmons v. State, 129 Ala. 41, 29 So. 929; Sanford v. State, 143 Ala. 78, 39 So. 370, and Town of Athens v. Miller, 190 Ala. 82, 66 So. 702. These cases are in line with the general rule. 50 Am.Jur., § 75, p. 860, and 83 C.J.S. Sunday § 51, p. 877.

The case of Shade v. Shade, 252 Ala. 134, 39 So.2d 785, upon which movants rest their main emphasis, involved the entry of a divorce decree on Sunday, and is not apposite to the facts in this case.

Title 13, § 295, of the Code of Alabama 1940 provides that courts of probate must at all times be considered as open, "except on Sundays." Section 325 of the same Title provides that county courts shall be open at the discretion of the judges, any day during the week, "except Sunday." However, Section 114 of this Title provides that:

"The circuit courts of the several counties of the state shall be open for the transaction of any and all business, or judicial proceedings of every kind, *at all times*."

This section was enacted in its present form in 1936. The circuit courts are courts of general jurisdiction. Section 346 of Title 7 of the Alabama Code provides for the filing of a complaint and the issuing and service of summons upon Sunday where the defendant is about to abscond or move out of the State. Section 859 of this Title provides for the issuance and execution of attachments upon Sundays under similar circumstances. There does not appear to be any other Alabama statutes affecting court proceedings on Sunday.

Whatever significance may be attached to Section 114 of Title 13 of the Alabama Code, that section affords no comfort to movants in support of their contention that the reception of the verdicts and other proceedings had on Sunday are *dies non juridicus*.[3]

The polling of the jury was permissible under the authority of Simmons v. State, supra. See Baxter v. People, 8 Ill. 368. It was likewise proper for the court to give the jury further instructions. Rowan & Hope v. Valadez, Tex.Civ.App., 258 S.W.2d 395; McCorkle v. State, 14 Ind. 39; People v. O'Dell, 1 Dak. 197(189), 46 N.W. 601; 50 Am.Jur., § 74, p. 860; and 83 C.J.S. Sunday § 51, p. 878.

The fact that the unsuccessful parties moved to exclude Mr. Clark's remarks made in the course of requesting additional instructions, and the fact that they made a motion out of the presence of the jury for a mistrial, would at most go to the validity of the rulings which followed, and would not affect the general verdicts, and the judgments subsequently entered. In Stone v. United States, supra [167 U.S. 178, 17 S.Ct. 785], the Court stated:

"Whatever may be said as to the right of the court on Sunday to have delivered to the jury special questions to be answered by them, the general verdict was not a nullity by reason of its being received or recorded on Sunday."

The first paragraph of Section 452 of Title 28 U.S.C.A. provides:

"All courts of the United States shall be deemed *always open for the*

---

3. This section was apparently enacted for the primary purpose of abolishing formal terms of court for which its forerunner provided. No reference is made to the section in Shade v. Shade, supra. In the absence of a declaration by the Supreme Court of Alabama as to its applicability to Sunday court proceedings, this Court will desist from further comment.

*purpose of* filing proper papers; issuing and returning process, and *making motions and orders."*

Rule 77(a) of the Federal Rules of Civil Procedure, with some change of verbiage, is of like import.[4] Rule 77(c) provides that the Clerk's office shall be open during business hours and on all days, "except Sundays and legal holidays." This statute and these rules, if they have not liberalized the common law rule as to the reception of a verdict on Sunday and incidental proceedings such as were here had, have certainly not restricted its scope.

A review of the authorities and of the statutes leads the Court to the conclusion that the motions of the unsuccessful parties are due to be overruled.

4. The last phrase of the Rule reads: "and of making and directing all interlocutory motions, orders, and rules."